FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 02 2013 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

RANDALL CARBONE,

        Plaintiff,

  -against-

COUNTY OF SUFFOLK; WARDEN OF THE
SUFFOLK COUNTY CORRECTIONAL FACILITY;
"JOHN DOE," name being fictitious, the party intended
being the correction officer assigned to the duty station at
the desk at the front of the tier of cells in which plaintiff
was housed in said correctional facility on the fourth floor
thereof in cell no. 3 on December 25, 2008; "JAMES DOE,"
name fictitious, the party intended being the correction
officer assigned to the duty station at the desk at the front of
the cells on the tier immediately adjacent to the tier on
which plaintiff was housed on December 25, 2008; and
"JOSEPH DOE," name fictitious, the party intended being
the correction officer assigned as supervising officer of the
defendants "John Doe" and "James Doe" on December 25,
2008 during the time frame of 6 p.m. to 7 p.m.,

        Defendants.
----------------------------------------X

CV-10-3631 (SJF)(AKT)

**OPINION & ORDER**

FEUERSTEIN, J.

On or about March 25, 2010, *pro se* plaintiff Randall Carbone ("plaintiff") commenced this action in the Supreme Court of the State of New York, County of Suffolk pursuant to 42 U.S.C. § 1983 against the County of Suffolk ("the County"); the Warden of the Suffolk County Correctional Facility ("SCCF") and three (3) correction officers at the SCCF identified only as "John Doe," the correction officer assigned to the duty station at the desk at the front of the tier of cells in which plaintiff was housed in said correctional facility on the fourth floor thereof in

1

cell no. 3, "James Doe," the correction officer assigned to the duty station at the desk at the front of the cells on the tier immediately adjacent to the tier on which plaintiff was housed on December 25, 2008 and "Joseph Doe," identified as the correction officer assigned as supervising officer of "John Doe" and "James Doe" on December 25, 2008 during the time frame of 6 p.m. to 7 p.m. (collectively, "the Doe defendants"). On August 9, 2010, defendants removed the action to this Court pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1331. Pending before the Court is defendants' unopposed motion seeking summary judgment dismissing plaintiff's claims in their entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, defendants' motion is granted.

I. Background

---

[1] Defendants served plaintiff with their motion for summary judgment on August 6, 2012. Although there is no indication that defendants served plaintiff with the notice to *pro se* litigants required by Rule 56.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("the Local Civil Rules"), during a pretrial conference before this Court on May 16, 2012, at which plaintiff was present telephonically, I, *inter alia*: (1) advised plaintiff of the nature and consequences of a summary judgment motion and (2) informed him that he must oppose defendants' motion or it would be decided against him and his case would be dismissed. Accordingly, there is no prejudice to plaintiff by defendants' seeming noncompliance with Local Civil Rule 56.2. At the pretrial conference on May 16, 2012, I also, *inter alia*: (1) set a briefing schedule pursuant to which, *inter alia*, plaintiff was required to serve his opposition to defendants' motion on or before August 28, 2012; and (2) scheduled a further pretrial conference for January 7, 2013. On November 20, 2012, defendants advised the Court that they did not receive any response to their motion by plaintiff and requested permission to file their motion for summary judgment as unopposed. By order dated November 21, 2012, I granted defendants' application for leave to file their motion for summary judgment as unopposed. Defendants filed their unopposed motion for summary judgment on January 4, 2013. To date, plaintiff has not filed any response to defendants' motion, nor sought an extension of time to do so. In addition, plaintiff failed to appear for the January 7, 2013 pretrial conference, has taking no steps to prosecute this action for over nine (9) months and has not complied with his obligation to keep the Court apprised of his current contact information, as a result of which mail sent to plaintiff by the Court has been returned as undeliverable (see, Doc. No. 42).

A.  Factual Background[2]

Following plaintiff's arrest on December 19, 2008 upon a charge of robbery in the second degree, i.e., threatening to use a gun during a bank robbery, plaintiff was held in the SCCF as a pre-trial detainee. (56.1 Stat., ¶ 1). In light of the violent nature of the criminal charge against him, plaintiff was classified as a violent and dangerous prisoner and, thus, was housed with equally violent and dangerous prisoners, including gang members. (56.1 Stat., ¶¶ 1, 10). Specifically, plaintiff was housed on the fourth floor of the SCCF E/N Tier in cell number three (3). (Compl., ¶ 5).

Plaintiff alleges that on December 25, 2008, at approximately 6:00 p.m., he left his cell at the request of another inmate and went to the area outside of cell number eighteen (18), located at the back end of the tier, where he was assaulted by four (4) other inmates. (Compl., ¶¶ 9-11). At approximately 6:25 p.m., plaintiff approached Correction Officer Raymond Suter ("C.O. Suter") during his supervisory tour of 4 E/N Tier and informed him that he had been assaulted by four (4) other inmates. (56.1 Stat., ¶ 3). At 6:36 p.m. that same evening, plaintiff was taken to the SCCF's medical unit, where he claimed that he had been choked and kicked, and had lost consciousness, but not that he had been sodomized. (56.1 Stat., ¶ 5). At 7:16 p.m. that evening, plaintiff was transported to Peconic Bay Medical Center to rule out a fracture of the orbital. (Rule 56.1 Stat., Ex. B).

On December 26, 2008, the Criminal Investigation Unit ("CIU") of the SCCF opened a criminal investigation into the inmate assault on plaintiff. (56.1 Stat., ¶ 6). During subsequent

---

[2] The facts are taken from the assertions in defendants' unopposed Statement of Undisputed Facts pursuant to Rule 56.1 of the Local Civil Rules, which are supported by the record, and my review of the record.

interviews with CIU investigators, plaintiff claimed that he had been assaulted because he had given his assailants money and had money hidden on his person to buy drugs from his assailants, and that his assailants had accused him of being a member of the Aryan Nation. (56.1 Stat., ¶ 7). In addition, plaintiff denied any prior problems with the particular gang whose members assaulted him. (Compl., ¶ 52). At the conclusion of the interview, plaintiff indicated that he wanted to press charges against his assailants. (56.1 Stat., ¶ 7). CIU also interviewed the other inmates on the tier when the assault occurred. (56.1 Stat., Ex. E).

On December 27 or 28, 2008, plaintiff was taken to Peconic Bay Medical Center after he admitted that he had also been sodomized during the assault because his assailants were searching for "cash" he claimed to have on his person in an effort to buy drugs. (56.1 Stat., ¶ 8).

On January 6 and 7, 2009, CIU charged plaintiff's assailants with assaulting plaintiff. (56.1 Stat., ¶ 9).

### B. Procedural History

On or about March 25, 2010, plaintiff commenced this action in the Supreme Court of the State of New York, County of Suffolk pursuant to 42 U.S.C. § 1983 against the County, the Warden of the SCCF and the three (3) Doe defendants alleging, *inter alia*: (1) that "John Doe" and "James Doe" acted with deliberate indifference, in violation of his Eighth Amendment rights, by exposing him to contact with violent inmates (first cause of action); (2) that "Joseph Doe" acted with deliberate indifference, in violation of his Eighth Amendment rights, by failing to perform his supervisory duties (second cause of action); and (3) that the County and Warden of the SCCF acted with deliberate indifference, in violation of his Eighth Amendment rights, by

"ha[ving] a policy of mixing violent and brutal gang members into the general prison population," (Compl., ¶ 60) (third cause of action). On August 9, 2010, defendants removed the action to this Court pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1331. Defendants now move for summary judgment dismissing plaintiff's claims in their entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has not opposed the motion.

II. Discussion

A. Standard of Review

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it might affect the outcome of the suit under governing law." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (quotations and citation omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Rojas v. Roman Catholic Diocese of

5

Rochester, 660 F.3d 98, 104 (2d Cir. 2011), cert. denied, 132 S. Ct. 1744, 182 L. Ed. 2d 530 (2012) (accord). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof).

If the district court determines that there is a genuine dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citation omitted); see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor."), to determine whether there is a genuine issue for trial. See Ricci, 557 U.S. 557, 129 S.Ct. at 2677. "An issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas, 660 F.3d at 104 (quoting Anderson, 477 U.S. at 248, 106 S. Ct. 2505); see also Ramos, 687 F.3d at 558. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 557 U.S. 557, 129 S.Ct. at 2677 (quoting Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); see also Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) ("There is no

genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." (quotations and citation omitted); Jeffreys, 426 F.3d at 553 ("The judge must ask not whether the evidence unmistakably favors ones [sic] side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." (quotations, alterations and citation omitted)).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact," Zalaski v. City of Bridgeport Police Department, 613 F.3d 336, 340 (2d Cir. 2010); see also Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (accord), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011); see also F.D.I.C. v. Great American Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010). Once the moving party meets its burden, the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. Spinelli, 579 F.3d at 166 (internal quotations and citations omitted); see also Celotex Corp., 477 U.S. at 323, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); see also Lyons v. Lancer Ins. Co., 681 F.3d 50, 56-7 (2d Cir. 2012), cert. denied, 133 S. Ct. 1242 (Feb. 19, 2013); Jeffreys, 426 F.3d at 554. The nonmoving party cannot avoid summary judgment simply by asserting "some 'metaphysical doubt as to the material facts[,]'" DeFabio v. East Hampton Union Free School District, 623 F.3d

7

71,81 (2d Cir. 2010) (quoting Jeffreys, 426 F.3d at 554); "may not rely on conclusory allegations or unsubstantiated speculation," Jeffreys, 426 F.3d at 554 (quotations and citations omitted); see also DeFabio, 623 F.3d at 81; and must offer "some hard evidence showing that its version of the events is not wholly fanciful." Miner v. Clinton County, New York, 541 F.3d 464, 471 (2d Cir. 2008).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record * * *; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(e) provides, in relevant part, that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: * * * (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed– show that the movant is entitled to it; * * *." Fed. R. Civ. P. 56(e). "Rule 56(e) * * * requires the nonmoving party to *go beyond the pleadings* and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file [as well as documents, electronically stored information, stipulations and other materials, see Fed. R. Civ. P. 56(c)(1)(A)],' designate 'specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (emphasis added); see also Holcomb v. Iona College, 521 F. 3d 130, 137 (2d Cir. 2008) (accord). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except the mere pleadings themselves* * * *," Celotex Corp., 477 U.S. at 324,

106 S. Ct. 2548 (emphasis added); see also Fitzgerald v. Henderson, 251 F.3d 345, 360-61 (2d Cir. 2001) ("In general, a party opposing a properly supported motion for summary judgment is not entitled to rely solely on the allegations of her pleading, but must show that there is admissible evidence sufficient to support a finding in her favor on the issue that is the basis for the motion."), unless the pleadings are verified in a manner "equivalent of the oath that would be given with respect to an affidavit," Fitzgerald, 251 F.3d at 361; see also Patterson v. County of Oneida, New York, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment."); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (holding that since the plaintiff had "verified his complaint by attesting under penalty of perjury that the statements [therein] were true to the best of his knowledge * * * [it] is to be treated as an affidavit for summary judgment purposes."), and assert factual matters other than upon "information and belief." See Patterson, 375 F.3d at 219; Fitzgerald, 251 F.3d at 361. "In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotations and citations omitted); see also Lyons, 681 F.3d at 57 (accord). "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory * * * or based on speculation." Major League Baseball, 542 F.3d at 310; Katel Ltd. Liability Co. v. AT&T Corp., 607 F.3d 60, 67 (2d Cir. 2010) (accord); see also Brown, 654 F.3d at 358 (holding that the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment). "When

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

"Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. * * * If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) ("A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains. See Local Rule 56.1(b). The facts set forth in a moving party's statement 'will be deemed to be admitted unless controverted' by the opposing party's statement. Local Rule 56.1(c)."); Local Civ. R. 56.1(a)-(c). Local Civil Rule 56.1(d) requires that "[e]ach [56.1] statement by the movant or opponent * * *, including each statement controverting any statement of material fact, [] be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Courts may decline to "consider as disputed any statement [in the movants' Local Rule 56.1 statement] supported by admissible evidence to which [the non-movant] objects, but does not support with evidence, * * *, in perfect accordance with Local Rule 56.1(d), * * *." Feis v. United States, 394 Fed. Appx. 797, 799 (2d Cir. Oct. 1, 2010) (summary order) (quotations and emphasis omitted). "[A] Local Rule 56.1 statement is not itself

a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz, 258 F.3d at 74; see also New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008). "[A]llegations * * * cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." Holtz, 258 F.3d at 73; see also Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 245 (2d Cir. 2004) ("[T]he district court may not rely solely on the statement of undisputed facts contained in * * * [a] 56.1 statement * * * [and] must be satisfied that the citation to evidence in the record supports the assertion.") "[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [56.1] Statements, the Court is free to disregard the assertion," Holtz, 258 F.3d at 73-4 (quotations and citations omitted), and review the record independently. Id. at 74. However, "[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." Monahan v. New York City Department of Corrections, 214 F.3d 275, 292 (2d Cir. 2000) (quotations and citations omitted); see also 24/7 Records, Inc. v. Sony Music Entertainment, Inc., 429 F.3d 39, 46 (2d Cir. 2005); Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (holding that Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")

B. Deliberate Indifference

"A convicted prisoner's claim of deliberate indifference * * * by those overseeing his care is analyzed under the Eighth Amendment because the right the plaintiff seeks to vindicate arises

11

from the Eighth Amendment's prohibition of 'cruel and unusual punishment.'" Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (quoting Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)). However, "a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody." Id. Thus, although plaintiff alleges that defendants violated his Eighth Amendment rights, since he was a pre-trial detainee being held in state custody at all relevant times, his claims will be deemed to allege due process violations under the Fourteenth Amendment. In any event, regardless of whether the plaintiff is a convicted prisoner or pretrial detainee, "the standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment." Id. at 70-71, 72.

Although "prison officials have a duty to protect prisoners from violence at the hands of other prisoners," Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quotations, alterations and citations omitted), "not * * * every injury suffered by one prisoner at the hands of another * * * translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834, 114 S. Ct. 1970. Prison officials violate the Eighth Amendment, or Due Process Clause of the Fourteenth Amendment, only when: (1) "the deprivation alleged [is], objectively, sufficiently serious, * * * [i.e.,] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," id. (quotations and citations omitted); and (2) the officials acted, or failed to act, with "a sufficiently culpable state of mind * * * [i.e.,] [with] deliberate indifference to inmate health or safety." Id. (quotations and citations omitted); see also Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012).

For a claim based on a failure to prevent harm, the objective element requires the inmate

12

to "show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. Ct. 1970. "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." Jabbar, 683 F.3d at 57 (quotations, alterations and citation omitted). "[P]risoners may not be deprived of their basic human needs– e.g., food, clothing, shelter, medical care, and reasonable safety– and they may not be exposed to conditions that pose an unreasonable risk of serious damage to their future health." Id. (quotations and citations omitted).

With respect to the subjective element, "deliberate indifference describes a state of mind more blameworthy than negligence * * * [but] less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835, 114 S. Ct. 1970. "[A] prison official cannot be found liable under the Eighth Amendment [or Due Process Clause of the Fourteenth Amendment] * * * unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. 1970. "To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. * * * Merely negligent conduct does not give rise to claims under the Fourteenth Amendment." Jabbar, 683 F.3d at 57.

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844, 114 S. Ct. 1970. In sum, "a prison official may be held liable * * * for denying humane conditions of confinement only if he knows that inmates

13

face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id.

Even assuming, *arguendo*, that John Doe and James Doe were negligent in leaving their duty stations and/or in conducting inspections of the tier on the date of the assault, and that Joseph Doe was negligent in supervising those defendants on the date of the assault, the record is devoid of any evidence that any of the Doe defendants showed deliberate indifference to plaintiff's health or safety, i.e., that they knew of, and disregarded, the existence of a substantial risk of serious harm to plaintiff, particularly absent any evidence that plaintiff had any problems with his assailants, the gang to which they allegedly belonged or any other inmate prior to the assault. Indeed, although plaintiff purportedly expressed concern to a correction officer of the existence of gang members on the tier, the record is entirely devoid of evidence of any specific threats or risks to plaintiff prior to the assault, or of any violent attack occurring on Tier 4 E/N, a maximum security tier, (56.1 Stat., Ex. B), prior to plaintiff's assault. As soon as a correction officer became aware of the assault, plaintiff was provided medical treatment, an investigation was commenced and charges were brought against his assailants. In addition, the record is bereft of any evidence showing that the members of the gang to which plaintiff's assailants belonged were any more violent than any of the other inmates detained on plaintiff's tier at the SCCF for committing a violent crime. Prison officials cannot be said to be deliberately indifferent to a "speculative risk" that an inmate with a history of violence might attack another inmate for an unknown reason, Bistrian v. Levi, 696 F.3d 352, 371 (3d Cir. 2012), nor does "a general risk of violence in a maximum security unit * * * itself establish knowledge of a substantial risk of harm," Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011). Accordingly, the branch of defendants' motion seeking summary judgment dismissing plaintiff's claims against the Doe defendants is

granted and plaintiff's claims against the Doe defendants are dismissed in their entirety with prejudice. See, e.g. Nunez v. Goord, 172 F. Supp. 2d 417, 430-31 (S.D.N.Y. 2001).

### 2. Claims against the County

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Id.; see also Connick v. Thompson, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los Angeles County, California v. Humphries, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., *solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, 131 S.Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018)); Humphries, 131 S.Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)).

15

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011), cert. denied, 132 S. Ct. 1741, 182 L. Ed. 2d 528 (2012). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions– either expressly or tacitly." Jones, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." Id. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quotations and citation omitted). "[D]eliberate indifference requires a showing that the official made a conscious choice, *and was not merely negligent*." Id. (emphasis added); see also Cash, 654 F.3d at 334.

"[D]eliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious * * * but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." Cash, 654 F.3d at 334 (quotations, alterations and citations omitted). Moreover, "[i]n limited circumstances, a [municipal entity's] decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." Connick, 131 S. Ct. at 1359. "To satisfy [Section 1983], a municipality's failure to train its employees in a relevant

16

respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. (internal quotations, alterations and citation omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360.[3]

Although prison officials have an "affirmative duty to protect those held in their custody," Cash, 654 F.3d at 335 (quotations and citation omitted), the existence of such a duty "does not mean that any harm that befalls a person in state custody necessarily manifests a municipal policy of deliberate indifference to prisoner safety." Id.

Although plaintiff alleges that the County and Warden of the SCCF had a policy "of mixing violent and brutal gang members into the general prison population," i.e., in failing to segregate violent prisoners from non-violent prisoners, the undisputed evidence shows that plaintiff was charged with committing a violent crime and, thus, was properly housed with other violent prisoners. Since plaintiff cannot establish that an official policy or custom of the County or SCCF caused him a constitutional injury, the branch of defendants' motion seeking summary judgment dismissing plaintiff's claims against the County and Warden of the SCCF is granted and plaintiff's claims against the County and Warden of the SCCF are dismissed in their entirety with prejudice.

---

[3] Although the Supreme Court recognized "a narrow range of * * * hypothesized single-incident liability" based upon "an obvious need for some form of training," Connick, 131 S.Ct. at 1361, this case does not fall within that narrow and "rare" range of cases, particularly because plaintiff does not allege a complete lack of training of County or SCCF personnel or that County or SCCF staff had an "utter lack of an ability to cope with constitutional situations" that existed in the hypothesized single-incident case. Id. at 1363.

17

III. Conclusion

For the reasons stated herein, defendants' motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and the complaint is dismissed in its entirety with prejudice. The Clerk of the Court shall enter judgment in favor of defendants and against plaintiff, close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order upon all parties, including mailing a copy of the Order to the *pro se* plaintiff at his last known address, see Fed. R. Civ. P. 5(b)(2)(C).

SO ORDERED.

/s/ S. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 2, 2013
Central Islip, N.Y.